**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

Bruce H. Nagel, Esq.
Robert H. Solomon, Esq.
Greg M. Kohn, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: 973-618-0400
Fax: 973-618-9194

*Attorneys for MicroBilt Corporation*

---

In re:

MICROBILT CORPORATION,

                Debtor.

---

MICROBILT CORPORATION,

                Plaintiff,

v.

CHEX SYSTEMS, INC., GUNSTER, YOAKLEY & STEWART, P.A., and DAVID M. WELLS,

                Defendants.

Case No. 11-18143

Judge: Honorable Michael B. Kaplan

Chapter 11

Adv. No.: 12-01177

Civil Action No.: 12-2902

---

**MICROBILT'S MEMORANDUM OF LAW IN OPPOSITION TO GUNSTER, YOAKLEY & STEWART, P.A. AND DAVID M. WELLS' MOTION TO WITHDRAW THE REFERENCE AND TRANSFER VENUE**

---

On the brief:
    Robert H. Solomon, Esq.
    Greg M. Kohn, Esq.

# Table of Contents

PRELIMINARY STATEMENT ................................... 1

FACTUAL BACKGROUND ...................................... 4

ARGUMENT ............................................... 12

I.    WITHDRAWAL OF THE REFERENCE IS NOT WARRANTED ..... 12

    A.   This Motion is Premature and Should Be Denied
         Because the Bankruptcy Court Shall Determine
         if this Proceeding is Core or Non-Core ......... 12

    B.   Federal Law Establishes a Policy of
         Centralizing All Bankruptcy-Related Actions ..... 15

    C.   Stern v. Marshall Should Be Narrowly
         Interpreted ................................... 16

    D.   The Gunster Defendants Have Not Shown Cause
         for Withdrawal ............................... 20

        i.    MicroBilt's Action is a Core Proceeding ..... 21

       ii.    Permitting the Bankruptcy Court to Administer
              the Adversary Proceedings Promotes Uniformity
              of Bankruptcy Administration ................ 25

      iii.    Permitting the Bankruptcy Court to Administer
              the Adversary Proceedings Reduces Forum
              Shopping and Confusion ..................... 28

       iv.    Permitting the Bankruptcy Court to
              Administer The Adversary Proceedings
              Fosters the Economical Use of the Debtors'
              and Creditors' Resources ................... 30

        v.    Permitting the Bankruptcy Court to Administer
              the Adversary Proceedings will Expedite the
              Bankruptcy Process ......................... 32

       vi.    The Gunster Defendants' Have Failed to
              Demonstrate "Cause" for Withdrawal of the
              Reference ................................. 33

II.   The Gunster Defendants' Motion to Transfer Venue
Should Be Denied ................................ 34

A. Private Interest Considerations................ 36

B. Public Interest Considerations................ 38

CONCLUSION ........................................... 40

## TABLE OF AUTHORITIES

### Cases

800-Flowers Inc. v. Intercontinental Florist, Inc.,
  860 F.Supp. 128 (S.D.N.Y. 1994) ............................... 40

Celotex Corp. v. Edwards,
  514 U.S. 300 (1995) ........................................... 16

Certain Underwriters At Lloyd's of London v. Otlowski,
  2009 WL 234957 (D.N.J. 2009) ................................. 14

Continental Cas. Co. v. Am. Home Assurance Co.,
  61 F.Supp.2d 128 (D.Del.1999) ............................... 35

Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,
  2011 WL 5244463 (S.D.N.Y. Nov. 2, 2011) ..................... 20

Eastman v. First Data Corp.,
  2011 WL 1327707 (D.N.J. Apr. 5, 2011) ...................... 40

Estate of Bleich,
  2008 WL 4852683 ............................................. 39

Gen. Elec. Cap. Corp. v. Teo,
  2001 WL 1715777 (D.N.J. Dec. 14, 2001) ................... passim

In re Adelphia Inst. Inc.,
  112 B.R. 534 (S.D.N.Y.1990) ................................. 25

In re Auto Specialities Manufacturing Company,
  134 B.R. 227 (W.D.Mich. 1990) .............................. 25

In re Canopy Fin., Inc.,
  2011 WL 3911082 (N.D. Ill. Sept. 1, 2011) .................. 20

In re Chet Decker, Inc.,
  2006 WL 3019663 (D.N.J. Oct. 23, 2006) ..................... 21

In re CIS Corporation,
  188 B.R. 873 (S.D.N.Y. 1995) ............................... 22

In re Direct Response Media, Inc.,
  2012 WL 112503 (Bankr. D. Del. 2012) ...................... 19

In re E. W. Trade Partners, Inc.,
  2007 WL 1213393 (D.N.J. Apr. 23, 2007)...................passim

In re Ford Motor Co. Ignition Switch Prods. Liab.Litig.,
  174 F.R.D. 332 (D.N.J.1997)................................40

In re Formica Corp.,
  305 B.R. 147 (S.D. N.Y. 2004)..............................29

In re Friedberg,
  87 B.R. 3 (S.D.N.Y. 1988)..................................15

In re G-I Holdings, Inc.,
  278 B.R. 376 (Bankr. D.N.J. 2002)..........................15

In re G-I Holdings, Inc.,
  278 B.R. 725 (Bankr. D.N.J. 2002)..........................15

In re GGC, LLC,
  2006 U.S. Dist. LEXIS 69163 (W.D. Pa. Sept. 26, 2006).......28

In re Heller Ehrman LLP,
  2011 WL 6179149 (N.D. Cal. Dec. 13, 2011)..............20, 31

In Re Pacor, Inc.,
  743 F.2d 984 (3rd Cir. 1984)...............................23

In re PermaLife Products, LLC,
  432 B.R. 503 (Bankr. D.N.J. 2010)..........................35

In Re Pruitt,
  910 F.2d 1160 (3rd Cir. 1990)..............................21

In re The Mortgage Store, Inc.,
  2011 WL 5056990 (D.Haw. Oct. 5, 2011).....................20

In re USDigital, Inc.,
  2011 WL 6382551 (Bankr. D. Del. 2011)..................passim

In Re Velocita Corp.,
  169 Fed. Appx. 712 (3rd Cir. 2006).........................23

Jumara v. State Farm Ins. Co.,
  55 F.3d 873 (3d Cir.1995)..............................36, 37

Jamuna Real Estate, LLC v. Bagga,
  2007 U.S. Dist. Lexis 4559 (E.D. Pa.).....................29

Kelley v. JPMorgan Chase & Co.,
    464 B.R. 854 (D. Minn. 2011)...............................33

Massachusetts Mut. Life Ins. Co. v. Marinari,
    2008 WL 1995126 (D.N.J. May 6, 2008).......................22

Perkins v. Verma,
    2011 WL 5142937 (D.N.J. Oct. 27, 2011).....................21

Pryor v. Continental Insurance Co. (In re Blue Point Carpet),
    86 B.R. 329 (Bankr.E.D.N.Y. 1988)..........................15

Shutte v. Armco Steel Corp.,
    431 F. 2d 22 (3d Cir. 1970)................................35

Starr v. Berry,
    25 N.J. 573 (1958).........................................40

Stern v. Marshall,
    131 S. Ct. 2594 (2011)..................................18, 19

Stoe v. Flaherty,
    436 F.3d 209 (3rd Cir. 2006)...............................22

supra, 2007 U.S. Dist. Lexis 29645, at * 7-*8 ................22

Things Remembered, Inc. v. Petrarca,
    515 U.S. 124 (1995)........................................23

Travelers Cas. & Sur. Co. v. Skinner Engine Co.,
    325 B.R. 372 (W.D. Pa. 2005)...............................27

Wakefern Food Corp. v. C & S Wholesale Grocers, Inc.,
    2002 WL 1482392 (D. Del. 2002).............................31

Weeks v. Kramer (In re Weeks),
    89 B.R. 697 (Bankr. W.D. Tenn. 1988).......................15

Yocham v. Novartis Pharms. Corp.,
    565 F. Supp.2d 554 (D.N.J. 2008)...........................39

**Statutes**

11 U.S.C. § 157(b)(1) .......................................24

11 U.S.C. § 157(b)(2) ...................................passim

11 U.S.C. §157(b)(3) ......................................... 15

11 U.S.C. §157(c)(1) ......................................... 20

11 U.S.C. §157(d) ......................................... 22,25

11 U.S.C. §636 ......................................... 33

28 U.S.C. § 157(b)(3) ......................................... passim

28 U.S.C. § 157(c)(3) ......................................... 15

28 U.S.C. §1334 ......................................... 16

28 U.S.C. §157(b)(1) ......................................... 16

28 U.S.C. §157(c)(1) ......................................... 17

## PRELIMINARY STATEMENT

Defendants, Gunster, Yoakley & Stewart, P.A. and David M. Wells (collectively the "Gunster Defendants"), have failed to demonstrate how withdrawal of the reference will promote uniformity in bankruptcy administration, reduce forum shopping and confusion, foster the economical use of the Debtors' and creditors' resources or expedite the bankruptcy process. The bankruptcy court is best-suited to conduct the pre-trial proceedings for the adversary proceeding given Judge Kaplan's extensive knowledge of the facts of MicroBilt Corporation's ("MicroBilt" or "Debtor") bankruptcy, the parties involved in this case, and the facts at issue. Keeping the pre-trial proceedings with the bankruptcy court will best promote judicial efficiency, uniformity of bankruptcy administration, economical use of debtor/creditor resources, and the expeditious prosecution of the bankruptcy process.

Moreover, the Gunster Defendants' motion is premature because the bankruptcy court has not made the determination of whether the claims are core or non-core. This Court need not determine if MicroBilt's claims in the adversary proceeding are core, non-core, or some combination of the two. For that reason alone, the Gunster Defendants' motion should be denied.

In addition, despite the Gunster Defendants' assertions, the Supreme Court in <u>Stern v. Marshall</u> did not conclude that

Bankruptcy Courts lack constitutional authority to determine certain proceedings listed as core under 11 U.S.C. §157(b)(2).

Judge Kaplan has vast experience regarding MicroBilt's bankruptcy and its issues with defendant, Chex Systems, Inc. ("Chex") and he is best-suited to oversee the pre-trial, managerial matters of the adversary proceeding regarding a potential mediation, subsequent discovery, and any settlement discussions in which the parties might ask the bankruptcy court to participate. It would be extremely inconvenient for MicroBilt, who is currently in bankruptcy, to litigate certain claims against Chex in other adversary proceedings pending before Judge Kaplan and these claims against Chex and the Gunster Defendants in another forum when the facts, witnesses, and documents will overlap. Judge Kaplan will be best able to move the adversary proceeding along expeditiously to the point where it is ready to be tried, or to effect an early settlement or resolution of the case, if such is possible.

Even if the Gunster Defendants' motion is granted, this Court should deny their motion to transfer venue to Florida. The Gunster Defendants cannot establish that the balance of the interests strongly weighs in favor of transfer. The witnesses and documents are available in New Jersey and the Gunster Defendants make no mention of any inconvenience to having to litigate this case in New Jersey.

Also, MicroBilt will be extremely inconvenienced in having to litigate claims against the Gunster Defendants and Chex in Florida as well as litigate similar claims against Chex in New Jersey. This will not promote efficiency in handling the matters and will result in harm to the Debtor's estate because it will unnecessarily be caused to spend additional substantial monies on duplicative discovery and litigation in two different forums, which monies would much better be suited for use by the Debtor to run its business and pay creditors.

The Gunster Defendants' argument that transfer is required because interpretation of Florida law is better left with the federal court in Florida is misplaced. This court routinely interprets the law of various states and is just as capable of interpreting Florida law as any other court. In addition, familiarity of the trial judge with applicable state law does not favor transfer and is not a deciding factor in transferring this case. Disturbing MicroBilt's choice of forum, in order to relieve the burden of this Court interpreting Florida law, is simply not called for here. Transferring this case to the District Court in Florida would serve neither "the convenience of parties or witnesses," nor "the interest of justice." §1404(a). Thus, New Jersey is the proper forum for this case.

As set forth more fully below, the Gunster Defendants' motion should be denied in its entirety.

## FACTUAL BACKGROUND

The Gunster Defendants factual statement is rife with inaccuracies and falsities. The Gunster Defendants misrepresent in their factual background that Chex and CL Verify, LLC ("CLV") entered into an agreement in January 2003.[1] The Gunster Defendants continually refer to this agreement as the "CLV Resale Agreement". This is not only false but also misleading because Chex and CLV have never entered into any agreement. See Exhibit H to Certification of Franklin Levin (hereinafter "Levin Cert.") at ¶¶ 9-13.

In reality, DP Bureau, LLC ("DP Bureau") and Chex entered into an agreement (the "Written Agreement") in 2003 whereby Chex would sell consumer-specific information and service offerings consisting of closure and inquiry files related to consumer transaction accounts with financial institutions, records of returned checks reported by retail merchants, and consumer identity data (hereafter referred to as "Information") to DP Bureau for resale to end users. See Exhibit A to Levin Cert. DP Bureau never purchased Information from Chex pursuant to the Written Agreement. See Levin Cert. at ¶ 11. DP Bureau never sold any Information to end user customers. See Levin Cert. at ¶ 12. Chex never submitted an invoice to DP Bureau pursuant to

---

[1] CLV was not even formed until 2004 and could not have entered into an agreement with Chex in 2003. See Levin Cert. at ¶ 15.

4

the Written Agreement.  <u>See</u> Levin Cert. at ¶ 14.  DP Bureau never had any end user customers.  <u>See</u> Levin Cert. at ¶ 13.  DP Bureau never owed or paid Chex any monies for use of Information under the Written Agreement.  <u>See</u> Levin Cert. at ¶¶ 11-14.  The agreement between Chex and DP Bureau is not at issue in this case and is part of a separate proceeding.[2]

The contract at issue in this case was entered into on or about August 26, 2009, between MicroBilt, a New Jersey corporation, and Chex (the "Information Resale Agreement").  <u>See</u> Exhibit B to Levin Cert.  The Information Resale Agreement was specifically negotiated between the parties to contain a lengthy contractual term and a pricing structure that was favorable to MicroBilt, and in exchange, MicroBilt released Chex from liability for wrongfully terminating a prior agreement between the parties.  <u>Id</u>.

The Information Resale Agreement defined confidential information as "a party's proprietary or confidential information that has been designated as Confidential Information or that, by the nature of the circumstances surrounding the disclosure, ought to, in good faith be treated as confidential or proprietary information" ("Confidential Information").  <u>Id</u>. The Information Resale Agreement set forth that neither party

---

[2] MicroBilt denies the Gunster Defendants allegations that DP Bureau or CLV failed to comply with any provisions of the Written Agreement between DP Bureau and Chex.

would sell, disclose, or otherwise make Confidential Information available in a manner not provided for in the Information Resale Agreement.  Id.

A list of the names of MicroBilt's customers, the amount of transactions (customer usage) in a given period of time, the pricing terms, and other confidential details relating to its customers are Confidential Information and trade secrets of MicroBilt.  This information is deemed Confidential Information and a trade secret because, among other things, MicroBilt's pricing, clients, their volume of use and information regarding MicroBilt's relationship with its clients are not generally known in the industry or to the public. See Levin Cert. at ¶ 16.

On or around January 8, 2010, MicroBilt and Chex entered into an amendment to the Information Resale Agreement (the "Amendment").  See Exhibit C to Levin Cert.  Pursuant to the Amendment, Chex and MicroBilt set forth specific limitations as to what MicroBilt was willing to provide to Chex and further defined what was confidential between the parties.  Chex and MicroBilt agreed that MicroBilt would provide to Chex, "the full known business name of each of its End Users using Chex data", that such "shall constitute Confidential Information as that term is defined and used in the Agreement", and that such "shall be provided to and used only by the Chex legal, technical

implementation and compliance departments (and not by the Chex sales or marketing departments)". See Id.

On or around August 31, 2010, through a series of corporate transactions, including a merger ("Merger"), MicroBilt acquired the assets and liabilities of CL Verify, LLC ("CLV") and its wholly owned subsidiary, CL Verify Credit Solutions, LLC ("Solutions"), resellers that also purchased Information from Chex. See Levin Cert. at ¶ 17. As part of the Merger, CLV and Solutions continued to exist and became wholly owned subsidiaries of MicroBilt. CLV and/or Solutions ceased purchasing Information from Chex on or about January 14, 2011. See Exhibit G to Levin Cert.

MicroBilt acquired from Solutions approximately 250 end users as part of the merger with CLV and Solutions. See Exhibit F to Levin Cert. at ¶¶ 28-31. These end users, previously known to and approved by Chex, were existing users of Information from Chex. When MicroBilt acquired these end users, it needed to obtain sub codes for them from Chex for them to access Information. See Id. In order to obtain a sub code for an end user, MicroBilt provided Chex with the full business name of the end user and Chex issued a sub code. See Id. After the Merger, MicroBilt requested approximately 250 sub codes from Chex, but Chex only provided approximately 200 of the sub codes and refused to provide the remaining 50 sub codes for end users that

Solutions assigned to MicroBilt, in violation of the Information Resale Agreement and Amendment. See Id.

On November 4, 2010, Chex filed a complaint (the "Chex Complaint") against CLV and its codefendant, DP Bureau, in the United States District Court, Middle District of Florida. See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #1.   In the Chex Complaint, Chex asserted a claim against CLV for breach of the Written Agreement between Chex and DP Bureau.   Attached as Exhibit D to the Chex Complaint were Chex invoices which contained Confidential Information, including the names of CLV's end users to whom CLV resold Chex' consumer credit data, the amount of data sold, the pricing per transaction charged for the Information by Chex, and the amount of fees owed by CLV to Chex for those resales.

CLV and DP Bureau filed an answer, counterclaims, and a third-party complaint on November 29, 2010 (the "Answer").   See Exhibit H to Levin Cert. As part of that pleading, CLV filed a Counterclaim against Chex (the "Counterclaim") and a third party complaint (the "Third Party Complaint") against the Gunster Defendants stemming from the egregious and wrongful public dissemination of Confidential Information. See Id. Chex then filed a motion to dismiss the counterclaims and also a motion to dismiss the third-party complaint. See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #20 and 21.   At the time that Chex

8

filed the Chex Complaint against CLV and DP Bureau, CLV was already a subsidiary of MicroBilt. <u>See</u> Levin Cert. at ¶ 18. Thus, the harm caused by the Gunster Defendants and Chex was caused to MicroBilt.[3]

After publicly filing MicroBilt's Confidential Information, Chex and the Gunster Defendants attempted to remedy their patently obvious wrongful conduct by filing a motion to redact the now publicly filed documents.[4] <u>See</u> Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #12. The Gunster Defendants disingenuously assert in their papers that CLV and DP Bureau would not cooperate with them in redacting the documents and opposed their motion to redact. <u>See</u> the Gunster Defendants moving brief at p. 6. In fact, CLV and DP Bureau only opposed Chex' motion to the extent that the relief requested by Chex was not broad enough and that the exhibits to the Complaint needed

---

[3] The Gunster Defendants argue that bringing the current claims contained in this adversary proceeding on behalf of MicroBilt is somehow evidence of forum shopping. This could not be further from the truth. MicroBilt was harmed by the Gunster Defendants' actions and filed suit to recover damages. In addition, the Gunster Defendants argued in their motion to dismiss CLV's and DP Bureau's claims in the Florida Litigation that "MicroBilt, as the surviving corporate entity following its merger with CLV, is the only entity with capacity to sue Chex, and is the real party in interest" as to CLV's Third Party Complaint against them. Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #21. The Gunster Defendants cannot now claim that this is forum shopping when they agree that MicroBilt is the real party in interest.

[4] Of course, by that time, the Confidential Information had already been publicly filed on the ECF system, open to all including MicroBilt's customers and competitors.

to be stricken or sealed. See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #17. Further, blaming CLV and DP Bureau for the Gunster Defendants' wrongful conduct is a transparent attempt by Chex and the Gunster Defendants to point the finger at others for their obvious failures.

Chex' disclosure of MicroBilt's Confidential Information was not an isolated incident. Chex repeatedly disclosed MicroBilt's customer lists and other confidential information in violation of contracts and trade secret law. See Levin Cert. at ¶ 19. For example, in 2008, during the time when Chex first wrongfully terminated MicroBilt's contract and access to Information, Chex sent CLV, prior to its Merger with MicroBilt and when CLV was a competitor of MicroBilt's, the list of MicroBilt's customers in an effort to have CLV contact MicroBilt's customers and have them leave MicroBilt. See Levin Cert. at ¶ 19. Another example of Chex' improper disclosure of MicroBilt's customer list is its intentional written decision to blind carbon copy its sales and marketing departments on e-mails containing MicroBilt's customer names, contracts and other MicroBilt confidential information in direct violation of its contract with MicroBilt. See Id. In addition, during the recent hearing before Judge Kaplan, Marc Wilhelm, Chex' in-house counsel, testified that he failed to take any steps to alert anyone at Chex that MicroBilt's customer list, pricing terms,

and other information were to be kept confidential. <u>See</u> Exhibit D to Levin Cert.

On March 18, 2011, MicroBilt filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, on March 23, 2011, CLV also filed a voluntary petition for relief under Chapter 11 and the two bankruptcy cases have been consolidated. <u>See</u> 11-18143-MBK, #1, 8.  Pursuant to a November 10, 2011 Order from the United States District Court in Florida, Chex' complaint against DP Bureau and CLV, as well as DP Bureau and CLV's answer and counterclaims were transferred to this Court. <u>See</u> Levin Cert. at Exhibit E.  The Florida Court dismissed DP Bureau and CLV's third-party complaint without prejudice, as the court declined to exercise supplemental jurisdiction as to the third-party complaint.[5]  <u>Id.</u>

MicroBilt then filed an adversary proceeding in this Court against Chex and the Gunster Defendants.[6]  <u>See</u> Exhibit F to Levin Cert.  MicroBilt's claims are core proceedings under section 157(b)(2)(A) and (O).  MicroBilt alleges, amongst other things,

_____

[5] The Gunster Defendants characterization of this as "a negative reception" by the Florida Court is false and belied by the record.
[6] MicroBilt's and CLV's reasoning for bringing their claims in the manner that they did is irrelevant to the issues before this Court and is merely a red herring suggested by the Gunster Defendants as a means of casting doubt on the validity of MicroBilt's claims.  Despite the Gunster Defendants' aspersions, they committed wrongful conduct and claims were filed to hold them accountable.

that Chex breached its contract with MicroBilt, Chex and the Gunster Defendants tortuously interfered with MicroBilt's contracts, that Chex wrongfully provided the Gunster Defendants with MicroBilt's Confidential Information and trade secrets, and that the Gunster Defendants attached the confidential information and trade secrets to a pleading which was publicly filed in violation of the Uniform Trade Secrets Act. See Id.

Chex filed its Answer on April 27, 2012. See 12-01177-MBK at #6. Part of the reason that the adversary proceeding is still at its early stages is because the Gunster Defendants requested additional time to file this motion and then answer the day before their answer was due.

## LEGAL ARGUMENT

### I. WITHDRAWAL OF THE REFERENCE IS NOT WARRANTED

#### A. This Motion is Premature and Should Be Denied Because the Bankruptcy Court Shall Determine if this Proceeding is Core or Non-Core

This motion is premature because Judge Kaplan has not ruled on whether MicroBilt's proceeding is core or non-core. The Gunster Defendants' argument that this proceeding is not "core" is incorrectly advanced as an initial matter to this Court. Withdrawal of the reference is a two-step process that requires the Bankruptcy Judge to classify the adversary proceeding as core or non-core before the motion for withdrawal can be heard by the District Court. See In re E. W. Trade Partners, Inc.,

12

2007 WL 1213393, *3 (D.N.J. Apr. 23, 2007). Until the bankruptcy judge has made that determination, the motion for withdrawal of the reference is not ripe. Id.; see Gen. Elec. Cap. Corp. v. Teo, 2001 WL 1715777, *6-*7 (D.N.J. Dec. 14, 2001).

> Section 157(b)(3) provides:
>
>> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3). This Court has interpreted the plain meaning of this statute to require, in the context of a motion to withdraw the reference, that the bankruptcy judge make the initial determination of whether a proceeding is core or non-core. In re East West Trade Partners, Inc., 2007 WL 1213393 at *3 ("This court finds that 28 U.S.C. § 157(b)(3) requires the bankruptcy judge to determine whether a proceeding is core or non-core."). The motion to withdraw the reference by the Gunster Defendants, therefore, is unripe for decision by this Court until such time as the bankruptcy court has had an opportunity to render an initial decision on the core/non-core issue under § 157(b)(3). See Certain Underwriters At Lloyd's of London v. Otlowski, 2009 WL 234957 (D.N.J. 2009)(denied the defendants'

motion to withdraw the reference because the bankruptcy judge had not determined whether proceeding was core or non-core).

For this reason alone, this Court should deny the motion to withdraw the reference so as to allow the bankruptcy court to make the initial determination as to whether this proceeding is core or non-core, as required by 28 U.S.C. § 157(b)(3). The Gunster Defendants' failure to file any application with the Bankruptcy Court for a determination as to whether this proceeding is "core" prior to filing this motion has caused this case to arrive at this Court's doorstep without any proper determination by the Bankruptcy Court. This Court should deny the motion without prejudice, until the Bankruptcy Court makes an initial determination, as required by 28 U.S.C. § 157(b)(3), as to whether this case falls within its core jurisdiction.

In a similar case in this district, Judge Cavanaugh denied a motion to withdraw the reference without prejudice in order to allow the Bankruptcy Court the opportunity to perform the review as to core or non-core required by 11 U.S.C. § 157(b)(3). See In re G-I Holdings, Inc., 278 B.R. 725, 730 (Bankr. D.N.J. 2002) (noting that the defendants had moved for withdrawal of the reference and that "[b]y order dated June 27, 2001, Judge Cavanaugh denied the motion without prejudice "pending the resolution of the bankruptcy court on the issue of whether the instant [coverage] proceeding is a core or non-core matter"). In

14

another G-I Holdings decision, Judge Gambardella stated that "it has been established that in the instance of a motion to withdraw the reference, such as here, it is appropriate for the bankruptcy court to determine the classification of the proceeding, see 28 U.S.C. § 157(c)(3), and for the district court to then decide the motion to withdraw the reference." In re G-I Holdings, Inc., 278 B.R. 376, 379, n.2 (Bankr. D.N.J. 2002); see also In re Friedberg, 87 B.R. 3 (S.D.N.Y. 1988); Weeks v. Kramer (In re Weeks), 89 B.R. 697 (Bankr. W.D. Tenn. 1988); Pryor v. Continental Insurance Co. (In re Blue Point Carpet), 86 B.R. 329 (Bankr.E.D.N.Y. 1988).

In this case, the bankruptcy court has made no determination as to whether MicroBilt's claims are core or non-core. Thus, the Gunster Defendants' motion is premature and must be denied.

## B.   Federal Law Establishes a Policy of Centralizing All Bankruptcy-Related Actions

In its motion, the Gunster Defendants seek to sever the adversary proceeding from the forum presiding over the Debtors' bankruptcy case. Clearly, this is inconsistent with the plainly articulated congressional policy preferring that litigation matters relating to a bankruptcy be adjudicated in the forum in which the bankruptcy is pending, with the goals of promoting efficiency and to preserve the assets of the Debtors' estate.

In enacting 28 U.S.C. §1334, Congress intended "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300 (1995) (citations omitted). Consistent with that intent, the Bankruptcy Court is the most appropriate forum to adjudicate the adversary proceeding. Thus, the Gunster Defendants' motion should be denied.

### C.   Stern v. Marshall Should Be Narrowly Interpreted

"Under 28 U.S.C. §157(b)(1), [b]ankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in cases under Title 11." In re E. W. Trade Partners, Inc., 2007 WL 1213393, at *3 (D.N.J. Apr. 23, 2007). "A proceeding is core under §157 if it 'invokes a substantive right provided by Title 11 or it if is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Id. (citations omitted). "Alternatively, under 28 U.S.C. §157(c)(1), 'a bankruptcy judge may hear a proceeding that is not a core proceeding, but that is otherwise related to the case under Title 11.'" Id. "In such proceedings, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court for de novo review and the entry of final judgment." Id.

Despite the Gunster Defendants' argument, the Supreme Court

did not conclude that the core/non-core distinction can no longer be used to determine whether a bankruptcy court has constitutional authority to finally adjudicate claims. See In re USDigital, Inc., 2011 WL 6382551, at *1 (Bankr. D. Del. 2011) ("Stern does not affect the statutory distinction between core and non-core proceedings set forth in 28 U.S.C. §157").

In Stern, the Supreme Court analyzed two discrete issues: (1) whether a state law counterclaim was a core proceeding, under §157(b)(2)(C), and (2) if the counterclaim was a core proceeding, whether it was constitutional to allow the bankruptcy judge to render a final judgment on the state law counterclaim. See USDigital, Inc., 2011 WL 6382551, at *3. After determining that the state law counterclaim was a core proceeding, the Supreme Court noted that, it is impermissible to allow non-Article III judges to enter final judgments on matters of private rights.[7] Id. at *6. Thus, the Supreme Court analyzed whether the state law counterclaim fell within the "public rights" exception to Article III.[8] See Stern, 131 S.Ct. at 2594.

"The core of the 'public rights' exception is that Congress

---

[7] "Private Rights" concern "the liability of one individual to another under the law as defined." Stern, 131 S. Ct. at 2612 (citations omitted)

[8] "Public Rights" are "those arising 'between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." Stern, 131 S. Ct. at 2612 (citations omitted).

enjoys flexibility in how to design the administration of a scheme when it creates new rights, even rights that just establish relationships among private parties." USDigital, Inc., 2011 WL 6382551, at *6. "Disputes in those circumstances need not be assigned to Article III courts, and Congress can assign those disputes to administrative agencies or what might be labeled as 'courts' even if they don't enjoy Article III protections." Id. The Supreme Court held that the state law counterclaim was not within the "public rights" exception and thus, the bankruptcy court lacked constitutional authority to adjudicate the claim. See Stern, 131 S.Ct. at 2594.

Stern "can be read to have broad implications as to the judicial power of bankruptcy courts." USDigital, Inc., 2011 WL 6382551, at *7. To do so, however, "is contrary to the letter and the spirit of the Supreme Court's holding." Id. Chief Justice Roberts made as much clear: "We conclude today that Congress, in one isolated respect, exceeded the Constitutional limitation on the exercise of judicial power to Article III judges by empowering the bankruptcy court to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." Stern, 131 S.Ct. at 2620. Thus, Stern "only removed a non-Article III court's authority to finally adjudicate one type of core matter, a debtor's state law counterclaim asserted under §157(b)(2)(C)."

18

In re Direct Response Media, Inc., 2012 WL 112503, at *10 (Bankr. D. Del. 2012). That is not the case here.

As one Court has explained:

> Determining bankruptcy courts could not enter proposed findings of fact and conclusions of law on such actions, would meaningfully change the division of labor in the statute between bankruptcy and district courts. This Court does not believe that such a meaningful change is consistent with the intention of the Supreme Court.

> Rather, the logical conclusion is that the bankruptcy court may enter proposed findings of fact and conclusions of law on such actions even though it may no longer finally decide them.

In re Heller Ehrman LLP, 2011 WL 6179149, at *6 (N.D. Cal. Dec. 13, 2011). Several district courts have reached the same conclusion as the Heller Ehrman Court. See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 2011 WL 5244463, at *7 (S.D.N.Y. Nov. 2, 2011); In re Canopy Fin., Inc., 2011 WL 3911082, at *5 (N.D. Ill. Sept. 1, 2011); In re The Mortgage Store, Inc., 2011 WL 5056990, at *6 (D.Haw. Oct. 5, 2011).

Thus, even if this Court determines that the bankruptcy court lacks constitutional authority to enter a final judgment on MicroBilt's claims, the reference should not be withdrawn at this point. Rather, the bankruptcy court should handle all aspects of the adversary proceeding, oversee the trial, and submit proposed findings of fact and conclusions of law to the

District Court under 11 U.S.C. §157(c)(1). This would be consistent with the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources and expediting the bankruptcy process.

### D. The Gunster Defendants Have Not Shown Cause for Withdrawal

Even if the Court concludes that the Gunster Defendants' motion to withdraw the reference is not premature, they have not established cause under the factors delineated by the Third Circuit for consideration of a motion to withdraw the reference. In this case, withdrawal of the reference is not warranted. As the Third Circuit Court of Appeals has held, a District Court may withdraw the reference only for "cause." In Re Pruitt, 910 F.2d 1160, 1168 (3rd Cir. 1990). The Gunster Defendants, as the moving party, bear the burden of showing cause. See Perkins v. Verma, 2011 WL 5142937, at *3 (D.N.J. Oct. 27, 2011)(citations omitted). While the authorizing statute does not define "cause," the requirement clearly helps implement the commonsense proposition that bankruptcy proceedings should be "adjudicated in bankruptcy court unless rebutted by a contravening policy." See Gen. Elec., supra, 2001 WL 1715777(citation and internal quotation marks omitted); In re Chet Decker, Inc., 2006 WL 3019663, *3-*4 (D.N.J. Oct. 23, 2006). The Gunster Defendants

cannot show that there is any contravening policy that would require withdrawal of the reference.

Among the factors this Court should consider in deciding whether to withdraw the reference are:

> the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources and expediting the bankruptcy process.

Pruitt, supra, 910 F.2d at 1168 (citations and internal quotation marks omitted).

In assessing whether withdrawal of the reference will promote judicial uniformity and economy, the classification of a proceeding as core or non-core is a threshold factor. East West Trade Partners, Inc., supra, 2007 U.S. Dist. Lexis 29645, at * 7-*8.Core proceedings are more essentially part of the bankruptcy process, and should seldom, if ever, be withdrawn. See Stoe v. Flaherty, 436 F.3d 209, 216 (3rd Cir. 2006). In addition, 28U.S.C. §157(d) should be construed narrowly, so it does not function as an "escape ladder" out of the bankruptcy court. In re CIS Corporation, 188 B.R. 873, 877 (S.D.N.Y. 1995).

### i.   MicroBilt's Action is a Core Proceeding

As stated above, the Gunster Defendants' motion is not ripe for disposition until the bankruptcy judge makes a determination on whether the adversary proceeding is a "core" or "non-core"

proceeding. Although the Gunster Defendants apparently ask this Court to make this threshold determination, withdrawal of the reference is a two-step process which requires a determination by the bankruptcy court as to whether the proceeding is a core proceeding prior to the District Court entertaining the motion for withdrawal of the reference. Massachusetts Mut. Life Ins. Co. v. Marinari, 2008 WL 1995126, at *2 (D.N.J. May 6, 2008) (asserting that threshold issue in withdrawal of reference is core vs. non-core determination); In re East West Trade Partners, Inc., 2007 WL 1213393, at *3 (D.N.J. Apr. 23, 2007).

The Gunster Defendants argue that the issues raised by MicroBilt are not "core" within the meaning of § 157(b)(2) because resolution of some of the issues will require application of state law. The Gunster Defendants' fail to acknowledge, however, that §157(b)(3) provides that: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law."

Pursuant to § 157(b)(2)(A) and (O), MicroBilt's claims against Chex and the Gunster Defendants are core claims. As such, the Bankruptcy Court may enter appropriate orders and judgments on these claims. MicroBilt's claims against Chex and the Gunster Defendants directly affect the administration of the estate and affect the debtor-creditor relationship. The outcome

22

of this action will have an effect on the estate, including altering the Debtor's rights, liabilities, options or freedom of action.   The claims set forth in MicroBilt's complaint will directly affect how much money is available in the estate. Chex' and the Gunster Defendants' actions will also affect the value of the property and assets of the estate.   The outcome will also impact the handling and administration of the bankrupt estate.   See In Re Pacor, Inc., 743 F.2d 984, 994 (3rd Cir. 1984), overruled on other grounds; Things Remembered, Inc. v. Petrarca, 515 U.S. 124 (1995); In Re Velocita Corp., 169 Fed. Appx. 712, 715 (3rd Cir. 2006).

Even if the bankruptcy court determines that MicroBilt's claims against the Gunster Defendants are non-core, the facts of the claims against the Gunster Defendants are inextricably intertwined with facts of the core claims against Chex. For example, Chex' history of failing to take the necessary precautions to protect MicroBilt's Confidential Information and trade secrets from improper disclosure to other parties is directly intertwined with MicroBilt's claims against the Gunster Defendants that they breached their duty to protect MicroBilt's proprietary information. The core claims against Chex and the claims against the Gunster Defendants cannot be separated. Chex' and the Gunster Defendants showed an utter disregard for MicroBilt's Confidential Information and trade secrets and these

23

claims and facts cannot be separated from the claims that Chex breached its contract with MicroBilt and tortiously interfered with MicroBilt's customers.   Thus, the bankruptcy court should hear MicroBilt's claims and submit proposed findings of fact and conclusions of law to the District Court, if the bankruptcy court cannot enter final judgment.

Further, even if it were true that the Bankruptcy Court lacked "core" jurisdiction over this case, that would not provide any reason, in and of itself, for this Court to withdraw the reference. In light of the strong federal policy embodied in 11 U.S.C. § 157(b)(1), authorizing all cases related to a bankruptcy — whether "core" or merely "related to" — to be referred to the Bankruptcy Court, District Courts have declined to withdraw the reference to the Bankruptcy Court even when a moving party shows that the case is not "core." As stated by Judge Bassler in Gen. Elec. Cap. Corp., the "cause shown" standard fixed by Section 157(d), relating to motions to withdraw the reference, demonstrates that congress intended to have matters related to a bankruptcy adjudicated in bankruptcy court unless rebutted by a contravening policy, and thus "[p]roceedings should not be withdrawn for the sole reason that they are non-core." 2001 WL 1715777, *3 (D.N.J. 2001) (emphasis added). When a matter is "not core," the Court will often nonetheless deny the withdrawal motion without prejudice,

subject to being renewed when the case is trial ready, as the claims asserted to be "core" may be resolved through settlement or motion practice, or otherwise mooted, prior to trial. See In re Auto Specialities Manufacturing Company, 134 B.R. 227, 229 (W.D.Mich. 1990); In re Adelphia Inst. Inc., 112 B.R. 534, 539 (S.D.N.Y.1990).

For this reason alone, this Court should deny the pending motion without prejudice, allowing for the motion to be renewed when the case is trial ready.

### ii. Permitting the Bankruptcy Court to Administer the Adversary Proceedings Promotes Uniformity of Bankruptcy Administration

A denial of the Gunster Defendants' motion will promote uniformity in bankruptcy administration. The Gunster Defendants' argument that the withdrawal of the reference somehow promotes uniformity in bankruptcy administration ignores the facts of this case. Withdrawing the reference would disturb the uniformity of administration of this case. Judge Kaplan has handled MicroBilt's bankruptcy for over a year, determining all of the factual and legal issues. He is intimately familiar with the parties, the major witnesses, from whom he heard testimony, and the issues that have been decided and that are still pending.

Contrary to the Gunster Defendants' statement that the bankruptcy court is not yet familiar with the facts and issues,

25

defendant, Chex, and MicroBilt have a long and complex history that resulted in MicroBilt filing for bankruptcy protection and asserting numerous claims against Chex in various adversary proceedings.[9]   Chex has filed two proofs of claims in the bankruptcy court.   Judge Kaplan is also currently addressing similar issues in the other adversary proceedings, including holding a hearing regarding authorizing the assumption of the Debtors' executory contract with Chex and rendering decisions on motions involving Chex which could impact this case.   See 11-18143-MBK, #46, 47, 419, 431, and 452; 11-02488-MBK, #4, 6, and 13.   Allowing this adversary proceeding to remain in the bankruptcy court would promote uniformity in bankruptcy administration because there will likely be overlap in discovery between the different adversary proceedings. Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC), 325 B.R. 372, 378 (W.D. Pa. 2005) ("Allowing one court to steer the same group of parties through factual discovery related to this adversary proceeding will promote administrative uniformity.   Substantive uniformity will also be served by allowing one court to determine how the bankruptcy negotiations

---

[9]  In addition to the matter at hand, there are currently two other adversary proceedings ongoing against Chex in the bankruptcy court, MicroBilt Corporation et al v. Fidelity National Information Services, Inc. et al., 12-01167-MBK and MicroBilt Corporation v. Chex Systems, Inc. et al., 11-02488-MBK.

and plan terms affect the insurance contracts, which are most likely the largest asset of the estate."). As such, Judge Kaplan is quite familiar with the underlying facts of this case, the parties, the witnesses and the other adversary proceedings.

The Gunster Defendants seem to argue that a party's refusal to permit a bankruptcy court to render final judgment in an adversary proceeding always enables that party to opt out of the bankruptcy proceeding entirely. This obviously is not the law. In this instance, withdrawing the reference will **impair**, rather than facilitate, the efficient use of judicial resources because the District Court will have to spend time learning the history between the parties and the outcomes of the other adversary proceedings involving the same parties and similar facts. Transferring MicroBilt's action to another court would also serve to multiply the Debtor's litigation costs while needlessly involving a second court. See Jamuna Real Estate, LLC v. Bagga, 2007 U.S. Dist. Lexis 4559 (E.D. Pa.) (denying motion to withdraw reference in view of bankruptcy court's broad familiarity with issues, and fact that outcome of adversary proceeding is likely to impact administration of estate); Gen. Elec. Cap. Corp. v. Teo, 2001 WL 1715777. As such, the motion to withdraw the reference should be denied.

District courts also have refused to exercise their discretion to withdraw the reference where keeping the

adversary proceeding before the bankruptcy court may facilitate settlement or early disposition of the matter. See In re GGC, LLC, 2006 U.S. Dist. LEXIS 69163, *6 (W.D. Pa. Sept. 26, 2006)("Moreover, if the case is amenable to settlement, the bankruptcy judge would be better suited to advance that possibility. Thus, I find this fact weighs against withdrawing the reference."). Here, Judge Kaplan's extensive knowledge of MicroBilt's bankruptcy, the parties, the witnesses, and the facts at issue all advocate that he would be best able to expeditiously shepherd this case through pre-trial matters, as well as any mediation or settlement discussions that take place.   In fact, there is currently a global settlement conference scheduled before Judge Kaplan on June 12, 2012. Because of his familiarity with this case and the related cases, he is best suited to expeditiously shepherd the case through pre-trial matters as well as any further settlement discussions in the event that a settlement is not reached at the upcoming conference.   It would be a waste of the parties and the courts time and resources to have to start again before a new judge.   As such, this factor weighs against withdrawing the reference.

### iii. Permitting the Bankruptcy Court to Administer the Adversary Proceedings Reduces Forum Shopping and Confusion

A denial of the Gunster Defendants' motion will reduce

forum shopping and confusion. Involving the District Court in this case could only serve to confuse the matter. Allowing the bankruptcy court, who is most familiar with the case, the parties, witnesses and the issues, to keep the case until it is trial ready, is plainly in the interest of the Debtor and the defendants since it will be proceeding before the same judge that is handling the underlying bankruptcy case, up until trial. See In re Formica Corp., 305 B.R. 147 (S.D. N.Y. 2004).

In an effort to bolster their argument that MicroBilt engaged in forum shopping, the Gunster Defendants completely misrepresent the facts as it relates to CLV's now dismissed claims against the Gunster Defendants in Florida. The Gunster Defendants state that MicroBilt engaged in forum shopping because it asserts the same claims as CLV did in Florida. This is untrue. Not only are there additional claims being brought on behalf of MicroBilt, but at the time that the Gunster Defendants violated the trade secret act by attaching MicroBilt's confidential client list to its complaint, MicroBilt had already acquired CLV and all of its assets and liabilities. See Levin Cert. at ¶ 18. Therefore, MicroBilt was the party that had been harmed by Chex and the Gunster Defendants' actions. The Gunster Defendants fail to explain how MicroBilt bringing a valid claim against the party that harmed them is forum shopping. The Gunster Defendants are quick to reach that

conclusion but provide no factual basis for it.  This argument is without merit and should be rejected.

As stated previously, in the action brought in the Middle District of Florida, the Gunster Defendants argued in their motion to dismiss the Third Party Complaint against CLV that MicroBilt was the real party in interest.  It follows then that MicroBilt would bring its claims against the Gunster Defendants in its home state, where the harm occurred, and where its documents and witnesses are located.  The Gunster Defendants have failed to show that MicroBilt engaged in forum shopping or that confusion would be reduced if the case was withdrawn.

### iv.   Permitting the Bankruptcy Court to Administer The Adversary Proceedings Fosters the Economical Use of the Debtors' and Creditors' Resources

A denial of the Gunster Defendants' motion will foster the economical use of the Debtors' and creditors' resources. The bankruptcy court is not only very familiar with the factual issues in this case, but also the other adversary proceedings pending before Judge Kaplan, because he is currently addressing similar issues in all of the adversary proceedings in the Debtors' bankruptcy case. Thus, the Bankruptcy Court is "better equipped to handle any pre-trial proceedings." Heller Ehrman, 2011 WL 6179149, at *8; see Gen. Elec. Cap. Corp., 2001 WL 1715777 at *5 (a motion to withdraw the reference was denied because the bankruptcy court was already familiar with the facts

and issues of the case); <u>Wakefern Food Corp. v. C & S Wholesale Grocers, Inc.</u>, 2002 WL 1482392, at *4 (D. Del. 2002) (same).

This matter and the similarly situated other cases are in their early stages. At this point, there is much uncertainty regarding how the cases will progress prior to the entry of final judgments. Some of the adversary proceedings may settle, motions may be granted or denied, and some cases may be disposed of. Considering the uncertainties and the fact that the outcomes of the similarly situated cases may affect the outcome in this case, it is clear that removing this case from the bankruptcy court would not foster the economical use of the Debtors' and creditors' resources. Removing this case from the bankruptcy court could result in conflicting rulings, a delay in resolving these claims, and increased litigation costs.

Further, forcing MicroBilt to litigate similar cases in multiple jurisdictions does not conserve the Debtor's assets. It is a waste of resources and assets for MicroBilt to have to send people that are integral to the bankruptcy proceeding to litigate in Florida as well as New Jersey. This is contrary to the goals of the bankruptcy court. Judge Kaplan not only has knowledge of the specific issues in this case and how the issues intertwine, but the bankruptcy court has a specialized knowledge of the Bankruptcy Code and procedures. The parties' resources will be preserved by allowing the judge with the most knowledge

31

of this case, and the best working knowledge of the Bankruptcy Code, to continue to administer the case.   As such, the motion to withdraw the reference should be denied.

**v.   Permitting the Bankruptcy Court to Administer the Adversary Proceedings will Expedite the Bankruptcy Process**

Judge Kaplan's intimate familiarity with the factual and legal issues will clearly expedite the bankruptcy process. Additionally, permitting the bankruptcy court to administer this case would prevent an unnecessary burden on the District Court, which is already handling very heavy caseloads. As one Court has recognized, retention of proceedings by the bankruptcy court:

> will promote efficiency in dispute resolution, by making best use of accumulated judicial familiarity with historical context and structural interrelationships, by enabling quicker adjudication on issues that do not involve contests of fact, by narrowing the range of issues in litigation, and by channeling pretrial procedural disputes to a forum that is not distracted by a criminal docket with speedy-trial dictates and the heavy multi-district litigation docket that our district court has. Finally, the benefit of a uniformity of judicial approach to a docket of litigation with numerous common issues supports the retention of this and all of the other matters, as a single grouping, for the near and mid-future.

Kelley v. JPMorgan Chase & Co., 464 B.R. 854, 865-66 (D. Minn. 2011). Moreover, even though the bankruptcy court can only submit proposed findings of fact and conclusions of law on the

non-core claims to the District Court for entry of final judgments, retention of this case in the bankruptcy court is still more expeditious.   Pursuant to 11 U.S.C. §636 and the Local Rules for the District of New Jersey, pretrial and discovery matters are frequently handled by the Magistrate Judge.   Therefore, the parties would still appear before two judges and the Magistrate Judge, not the District Court Judge would be immersed in the facts of this case.   Finally, the Gunster Defendants have not demanded a jury trial leaving only the task of entering judgments on the non-core claims to the District Court.   There is no prejudice to the parties by allowing the case to proceed in the bankruptcy court until such time that a trial is imminent, at which time the Gunster Defendants can renew their motion.   As such, this factor weighs in favor of keeping the case in the bankruptcy court.

### vi.   The Gunster Defendants' Have Failed to Demonstrate "Cause" for Withdrawal of the Reference

It is clear that the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources and expediting the bankruptcy process favor keeping the case in the bankruptcy court.   Based upon the foregoing, the Gunster Defendants have failed to demonstrate "cause" for withdrawal of the reference to the bankruptcy court.

33

As such, the Gunster Defendants' motion should be denied in its entirety.

## II.  The Gunster Defendants' Motion to Transfer Venue Should Be Denied

This Court need not reach this issue if the motion to withdraw the reference is denied. Even if this Court does withdraw the reference, the case should not be transferred to Florida. The Gunster Defendants' motion to transfer fails because they cannot show that the factors to be considered weigh heavily in favor of transfer.

A plaintiff's choice of forum is paramount, "the decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." Shutte v. Armco Steel Corp., 431 F. 2d 22, 25 (3d Cir. 1970). There is a "strong presumption in favor of maintaining venue where the bankruptcy case is pending." In re PermaLife Products, LLC, 432 B.R. 503, 516 (Bankr. D.N.J. 2010)(citation omitted). The burden is not on MicroBilt to show that Florida is an inappropriate forum. On the contrary, the burden is upon the movant, the Gunster Defendants, to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See Continental Cas. Co. v. Am. Home Assurance Co., 61 F.Supp.2d 128, 131 (D.Del.1999). The Gunster

Defendants cannot make this showing.  This action should remain
in New Jersey because this Court is competent to decide it, it
would be inconvenient for MicroBilt to litigate similar claims
in New Jersey and Florida, and there is no inconvenience to the
Gunster Defendants to litigate before this Court.

Section 1404(a) provides for a case to be transferred in
the interest of justice to any other district or division where
it might have been brought "[f]or the convenience of parties and
witnesses." A § 1404(a) analysis includes an assessment of the
public and private interests involved in the choice of forum:

> The private interests have included:
> plaintiff's forum preference as manifested
> in the original choice; the defendant's
> preference; whether the claim arose
> elsewhere; the convenience of the parties as
> indicated by their relative physical and
> financial condition; the convenience of the
> witnesses-but only to the extent that the
> witnesses may actually be unavailable for
> trial in one of the fora; and the location
> of books and records (similarly limited to
> the extent that the files could not be
> produced in the alternative forum).
>
> * * *
>
> The public interests have included: the
> enforceability of the judgment; practical
> considerations that could make the trial
> easy, expeditious, or inexpensive; the
> relative administrative difficulty in the
> two fora resulting from court congestion;
> the local interest in deciding local
> controversies at home; the public policies
> of the fora; and the familiarity of the
> trial judge with the applicable state law in
> diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir.1995)(internal citations omitted).Courts are mindful that "the plaintiff's choice of venue should not be lightly disturbed." Id. (citation omitted). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. Thus, MicroBilt's preference to litigate in this Court, standing alone, easily outweighs the Gunster Defendants' preference to litigate in the Florida District Court.

   A.    **Private Interest Considerations**

   In the instant case, most of the private factors favor denying transfer and keeping the case in the District of New Jersey. None of the private interest factors weighs even slightly in favor of transferring the action to Florida. The moving party's interest in convenience generally only weighs in that party's favor if the witnesses or documents might be unavailable in a given forum. Jumara, 55 F.3d at 879. Such is not the case here.

   There is no inconvenience to the parties to produce the necessary documents in either forum and there is no inconvenience to the Gunster Defendants' witnesses if the case

is litigated in one forum over the other. In fact, the Gunster Defendants make no mention of any inconvenience to having to litigate this case in New Jersey. Contrary to the Gunster Defendants' unfounded assertion that the relevant books and records are located in Florida, MicroBilt's relevant books and records are located in New Jersey. It would be extremely inconvenient for MicroBilt, who is currently in bankruptcy, to litigate certain claims against Chex in one forum and other claims against Chex and the Gunster Defendants in another forum when the facts, witnesses, and documents may overlap.[10] Moreover, MicroBilt and its witnesses are in New Jersey and are currently working on administering the bankruptcy. It would not only be inconvenient and take essential people away from the bankruptcy proceedings if they had to travel to Florida to prosecute this action, but it would harm the Debtor's estate because it would be a waste of assets since transfer could result in duplicative litigation and discovery in two different courts. This tips in favor of New Jersey. See Estate of Bleich, 2008 WL 4852683.

---

[10] Contrary to the Gunster Defendants statement that MicroBilt somehow engaged in forum shopping by filing a complaint in its home state, the fact that MicroBilt brought an action in Florida against other parties in an unrelated matter is irrelevant to this Court's determination of the proper venue. In fact, the only reason MicroBilt brought the "New Florida Action" in Florida was because the agreement at issue in that case contained a forum selection clause that called for venue in Florida.

The remaining private interest factor, where the claim arose, does not militate in favor of transfer. Contrary to the Gunster Defendants' argument, both venues have ties to the facts at issue in this case. MicroBilt is a New Jersey company and the harm caused by the Gunster Defendants occurred to MicroBilt in New Jersey. Moreover, the facts giving rise to the claims against Chex occurred in New Jersey when MicroBilt requested sub codes from Chex and Chex denied them.[11] The fact that the Gunster Defendants acted in Florida is not enough to weigh in favor of transfer because by posting MicroBilt's confidential information to PACER, the confidential information was distributed outside of Florida. Thus, because the factors do not substantially weigh in favor of one forum over the other, MicroBilt's choice of New Jersey is not outweighed.

B.   **Public Interest Considerations**

The Gunster Defendants likewise cannot carry their burden of showing that the public interest factors compel transfer. Enforceability of the judgment does not favor either forum because the ultimate judgment will be enforceable in both states. See Yocham v. Novartis Pharms. Corp., 565 F. Supp.2d 554, 559 (D.N.J. 2008). The practical considerations that could make the trial easy, expeditious, or inexpensive favor New Jersey. As stated above, MicroBilt's witnesses and documents are

---

[11] Chex is a Minnesota company.

38

located in New Jersey. MicroBilt is currently in bankruptcy and by litigating the case in bankruptcy court it will be more expeditious and inexpensive because it will avoid duplicative litigation with Chex in different forums on similar issues. Id.

Administrative ease does not favor transfer to the Florida. The local interest factor does not favor transfer to Florida, since many of the facts in issue have a connection to New Jersey. See Yocham, 565 F. Supp.2d at 559 (concluding that the local interest factor does not strongly favor transfer where plaintiff's chosen forum has some connection to the underlying facts at issue). Federal courts in New Jersey have found that a plaintiff's home state has an interest in protecting its consumers. Eastman v. First Data Corp., CIV. 10-4860 WHW, 2011 WL 1327707 (D.N.J. Apr. 5, 2011)(citing In re Ford Motor Co. Ignition Switch Prods. Liab.Litig., 174 F.R.D. 332, 348 (D.N.J.1997)). Contrary to the Gunster Defendants' statement that New Jersey has no local interest in this action, MicroBilt is a New Jersey company, the harm to MicroBilt occurred in New Jersey, and the alleged breaches by Chex occurred in New Jersey.

Finally, although the Gunster Defendants argue that Florida courts are more experienced in applying Florida law, familiarity of the trial judge with applicable state law does not favor transfer. Federal district courts are regularly called upon to interpret the laws of jurisdictions outside the states in which

they sit. Disturbing MicroBilt's choice of forum, in order to spare this Court the trouble of interpreting Florida law, is simply not called for here. This Court will permit the Gunster Defendants "every opportunity to protect and vindicate" its rights, there is no interest of justice issue that would mitigate against allowing a New Jersey court to decide this action. See 800-Flowers Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 136 (S.D.N.Y. 1994).

After weighing the public and private interest factors, "unless the balance is **strongly** in favor of the defendant, the plaintiff's choice of forum should **rarely** be disturbed." Starr v. Berry, 25 N.J. 573, 584 (1958) (citations omitted)(emphasis added). The Gunster Defendants cannot carry the heavy burden here. Transferring this case to the District Court in Florida would serve neither "the convenience of parties or witnesses," nor "the interest of justice." §1404(a). Thus, the Gunster Defendants' motion to transfer should be denied and New Jersey should be declared the proper forum for this case.

<u>CONCLUSION</u>

Based upon the foregoing, this Court should deny the Gunster Defendants' in its entirety.

Respectfully submitted,

BRUCE H. NAGEL

Dated: June __, 2012